UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

CHRISTINE KOCH,                    )
                Plaintiff,         )
                                   )
vs.                                )        1:05-cv-1753- LJM-WTL
                                   )
CONVENIENCE INDUSTRY ASSOCIATES    )
LLC, d/b/a McClure Oil Corp.,      )
                Defendant.         )

## ORDER

This cause is before the Court on Defendant's, Convenience Industry Associates LLC, d/b/a McClure Oil Corp. ("Convenience"), Motion for Summary Judgment (Docket No. 33).  Plaintiff, Christine Koch ("Koch"), was a store manager for Convenience at its Cicero, Indiana, location.  She filed this lawsuit alleging that Convenience violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*  More specifically, Koch contends that Convenience is liable to her for three reasons:  for disparate treatment on the basis of her sex, alleged sexual harassment that created a hostile work environment, and unlawful retaliation.  The parties have fully briefed this matter and it is now ripe for ruling.

For the reasons stated herein, Convenience's Motion for Summary Judgment is **GRANTED in part and DENIED in part**.


## I.  PRELIMINARY EVIDENTIARY MATTER

As an initial matter, the Court must address Convenience's Motion to Strike Certain Statements Submitted in Opposition to Summary Judgment (Docket No. 59).  Convenience requests that the Court strike several statements that were attached to Koch's affidavit.  Specifically, those

statements are from Jennifer Thompson, Roxanna Uhrick, Hazel LaFave, and Stacey Wiley. According to Koch's affidavit, these individuals reported directly to her while she was employed by Convenience and personally gave her the statements.  Koch Aff., ¶¶ 3-4.  To summarize, those statements reflect these individuals' opinions that Koch was a good manager, that she should not have been fired, and that it was difficult to work with the assistant manager.  The statements are unsworn and do not indicate that they have been made under the penalties of perjury.  Therefore, Convenience argues that the statements "fail to carry the indices of reliability and veracity contemplated by [Federal Rule of Civil Procedure 56(e)]" and should be stricken for failing to comply with that rule's requirements.  Convenience's Br. in Supp. of Mot. to Strike, at 2.  Koch has failed to respond to the motion to strike.

Convenience correctly notes that unsworn statements submitted in opposition to summary judgment are commonly stricken or ignored.  *See*, *e.g.*, *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1255 n.13 (7th Cir. 1990); *Arnold v. Morton Int'l, Inc.*, Cause No. IP 97-1279-C-T/G, 2000 WL 10007176, *3 (S.D. Ind. July 19, 2000).  Koch obviously intends to rely upon the information contained in these statements because she refers to it in her brief in opposition to the motion for summary judgment.  Koch's Br. in Opp. at 19-20.  It appears that Koch, by attaching the statements to her own affidavit, is attempting to circumvent Rule 56(e)'s requirements.  Accordingly, the Court agrees that the unsworn statements should be stricken and the Court will not consider them.

## II.  <u>BACKGROUND</u>

Convenience owns several gas stations and convenience stores in Indiana.  Koch Dep., Ex. 14. Kelly McClure ("McClure") is the company's Vice President of Retail Operations.  McClure

Dep. at 10-11.  As vice-president, McClure is responsible for retail operations and supervising district supervisors.  *Id.* at 10.  Convenience employs four district supervisors, who each supervise about eight or nine store managers in his or her district.  *Id.* at 9.  One of those district supervisors is Tom Seidl ("Seidl"), who oversees the stores in the Indianapolis area, which includes the Cicero store where Koch worked.  *Id.* at 9; Seidl Dep. at 97.  Although the district supervisors supervise the store managers and oversee the stores in his or her area, decisions about hiring and terminating store managers are jointly made by McClure and the district supervisor.  McClure Dep. at 15-17; Seidl Dep. at 40-41, 114.  Occasionally, the human resources manager will assist with termination decisions.  McClure Dep. at 17.

Koch signed both an employment agreement and an employment contract with Convenience on February 14, 2005.  Koch Dep. at 63-64 and Exs. 10-11.  On February 21, 2005, Koch was hired as a store manager for Store 65 in Cicero, Indiana.  Koch Dep. at 63 and Exs. 10, 12; McClure Dep. at 20.  Store 65 opened on March 7, 2005.  Seidl Dep. at 59.  As store manager for Store 65, Koch supervised approximately twelve employees and was responsible for all matters related to cash, inventory, and personnel matters of that store.  *Id.* at 32, & Ex. 8; Koch Dep. at 65-66.

For roughly her first four weeks of employment, Koch was trained by Rick Redmond ("Redmond"), Convenience's Training Manager.  Seidl Dep. at 59.  During this training period, Koch had minimal contact with Seidl, who was busy preparing for Store 65's opening and hiring and training new employees.  *Id.* at 59-60.  Once the store opened, Koch was the store manager for approximately seven weeks until she was terminated on April 22, 2005, for creating an intimidating and hostile work environment and unprofessional behavior.  *Id.* at 60; Koch Dep. Ex. 18.

3

According to Convenience, Koch was less than a model employee. As part of Seidl's responsibilities, he provided a weekly accomplishment list to McClure. Seidl Dep. at 6-7. His list for the week ending April 3, 2005, indicates that on March 30, 2005, he verbally counseled Koch after the assistant manager, Marilee King ("King"), complained to him about Koch. *Id.* at 12, 14-15 and Ex. 1. Specifically, King indicated that Koch did not like to be bothered by store employees after she had left the store and became agitated when employees would contact her for any reasons, including problems that a store manager needed to address. *Id.* Seidl's accomplishment list indicates that he counseled Koch about this incident and the differences between her and King. *Id.* Seidl claims that shortly thereafter, on April 6, 2005, he had a discussion with another employee, Patricia Anderson ("Anderson") about how Koch was abrupt with her when she contacted Koch at home with a question. *Id.* at 18-21. Seidl contends that Anderson complained about Koch's treatment of her on at least two occasions. *Id.* at 37.

On the weekend of April 9, and 10, 2005, Seidl was out of town and McClure covered his responsibilities, including administrative checks in Seidl's district. *Id.* at 43-44. In Seidl's absence, King contacted McClure and reported that she was having a problem at the store and that Koch had not reported to work that day. *Id.* at 44. McClure then called Koch at home and informed her that it was Koch's responsibility to address any problems that King encountered at the store. McClure Dep. at 38, 40, & Ex. 2. She also reminded Koch that store managers were required to work on Saturday mornings and directed Koch to report to the store. *Id.*; Seidl Dep. at 44, & Ex. 10; Koch Dep. at 77. Koch allegedly replied that she had leg cramps and could not move. McClure Dep. at 39, & Ex. 2; Seidl Dep. at 44. McClure then asked if there was anything that she could do to help and whether Koch needed to go to a hospital. McClure Dep. Ex. 2; Koch Dep. at 77. Koch stated

4

that she did not need to go to a hospital and would report to work. *Id.* McClure then called back to the store and found King crying. McClure Dep. at 58, & Ex. 2. King said that Koch had contacted her and chastised her for telling McClure about Koch's absence. *Id.* McClure later notified Seidl of the incident. *Id.* at 44; Seidl Dep. at 80-81.

Thereafter, on April 15, 2005, Seidl claims that he verbally counseled Koch about several issues that she needed to address, including unprofessional behavior toward store employees. Seidl Dep. at 40-41, 46, & Ex. 11. He contends that he discussed the April 9, 2005, incident and reminded Koch that it was her responsibility to manage store operations. *Id.* at 46, & Ex. 11. Finally, he asserts that he warned Koch about other specific incidents of unprofessional behavior such as stomping her foot and talking to herself about problems, a tendency to anger quickly when called at home or on her day off, and her treatment of King. *Id.*

According to Convenience, Koch again engaged in unprofessional treatment of her employees just two days after Seidl counseled her. *Id.* at 48, 50-51; Barker Aff. & Attach.; King Aff. & Attach. Specifically, on April 17, 2005, one of the store employees, Lisa Barker ("Barker"), told King that she would work past her scheduled shift because she knew that the store would be short-handed that day. Seidl Dep. at 48; Barker Aff. & Attach.; King Aff. & Attach. King thanked Barker but told her to go home because she believed that Koch would object to Barker working overtime. Seidl Dep. at 48; Barker Aff. & Attach.; King Aff. & Attach.

Barker contacted King a few hours later to see how King was doing and, at that time, King informed Barker that she was struggling to get her work done and would appreciate it if Barker could return to the store. Seidl Dep. at 48; Barker Aff. & Attach.; King Aff. & Attach. However, King asked Barker to contact Koch at home first in order to obtain approval to work overtime. Barker Aff.

5

& Attach.; King Aff. & Attach.  Barker claims that Koch was furious when she called Koch at home and that Koch hung up on her.  Barker Aff. & Attach.  Barker contends that Koch called her back a couple of minutes later and screamed at her and uttered various profanities.  *Id.*  Ultimately, Koch told Barker that she could report to the store and that she had notified King that Barker would be returning.  *Id.*  King claims that Koch also called her and stated, "You can't handle the store by yourself for three hours?", before uttering some profanities and indicating that she was going to have a talk with Seidl about the matter and overtime for Barker.  King Aff. & Attach.

Seidl states that he learned of the incident with King and Baker on April 18, 2005, when the two complained to him.  Seidl Dep. at 49-50, & Ex. 1.  He investigated the incident by meeting with the two employees individually and obtaining written statements from them.  *Id.*; Barker Aff., ¶ 2, & Attach.; King Aff., ¶ 2, & Attach.  Seidl discussed the investigation with McClure and recommended that Koch be terminated based upon her conduct and prior counseling.  Seidl Dep. at 50-51 and Ex. 1; McClure Dep at 64-66.  After reviewing the documentation prepared by Seidl, McClure agreed with the recommendation that Koch should be terminated.  McClure Dep. at 34-38, 65.

On April 22, 2005, Seidl informed Koch that she was being terminated because of her unprofessional behavior and for creating an intimidating and hostile work environment.  Seidl Dep. at 55, & Exs. 1, 12; McClure Dep. at 36; Koch Dep. Ex. 18.  Seidl states that he decided that termination was appropriate rather than placing Koch on a performance improvement plan because Koch had only been in her position as store manager for seven weeks and he did not feel that she established that she could handle the responsibilities required by the position.  Seidl Dep. at 85-86.

In contrast, Koch denies that she was ever belligerent toward other employees, that she used profanity, or that Seidl ever had any counseling sessions with her.  Koch Dep. at 73-75, 78-79, 83-84, 87-90; McFarland Aff., ¶¶ 5-6; Klepfer Aff., ¶¶ 5-7 .  She also denies hanging up on Barker.  Koch Aff., ¶ 1.  Koch claims that her termination was Seidl's final act against her after she complained about incidents of Seidl's sexual harassment toward her.  She asserts that she complained to Seidel and McClure that the complaints were false and that if she was being terminated it should be for a good reason.  Koch Dep. at 90-94 and Ex. 18.  She intimates that she expressed that the termination was really based on the fact that she had complained about Seidl's sexual harassment.  *Id.*

Koch claims the during the short time period that she was employed by Convenience, she was subjected to several different actions that she found harassing.  Specifically, she states that Seidel would call her a "dumb blond," ask if she was sure that she was not a natural blond, and stated that "there are ways to find that out."  Koch Dep. at 96-98.  She adds that Seidel made approximately fifteen to twenty sexually explicit jokes, including ones that she felt were "very demeaning towards women," during the time she worked for Convenience.  *Id.* at 96, 103-04, 110.  In addition, Koch implies that Seidl had the company newsletter incorrectly print that Koch's favorite movie was *9½ Weeks*, which Seidel considers to be a sexually explicit movie.  Koch Aff., ¶ 2; Seidl Dep. at 79-80; McClure Dep. Ex. 8.  Koch denies telling Seidl that this was her favorite movie and states that she has never even seen the movie.  Koch Aff., ¶ 2.  Koch asserts that she first complained about Seidl's actions on March 16, 2005, when she left McClure a voice message requesting that McClure speak with Seidl about his behavior.  Koch Dep. at 123-24.  She states that she also told training manager Redmond and her ex-husband that Seidl was telling dirty jokes.  *Id.* at 12-14, 127, 129-30.

7

In addition, Koch alleges that on two different occasions Seidl rubbed up against her while she was seated at her desk. *Id.* at 96, 104. Specifically, Koch states that Seidl pressed his "inner hip" against her "back side." *Id.* at 105. Koch claims that each time this happened, she complained to Seidl that he was making her feel uncomfortable, after which Seidl would initially back off before leaning back into her and rubbing against her again. *Id.* at 96, 106-07. In addition to these two occasions, Koch contends that Seidl made inappropriate contact with her on three occasions by leaning into her and pressing his upper body into her side while she was seated at her desk. *Id.* at 116-17. Koch claims that she made a second complaint about Seidl on April 16, or 17, 2005, by leaving another voice message for McClure and requesting whether McClure had spoken to Seidl yet about his behavior. *Id.* at 125-26. In fact, Koch's deposition testimony gives the impression that she was deeply-troubled by Seidl's actions because she claims that she felt uncomfortable "every time [Seidl] was in the store" and that she was anxious about whether he would try to rub up against her, tell dirty jokes, or try to make her feel stupid by calling her a "dumb blond." Koch Dep. at 97-98.

Finally, Koch states that some time during her last week of employment Seidl asked her if she had ever seen a "pierced penis." *Id.* at 109. She states that Seidl then said "look at this" and placed a post-it note on her desk that contained a hand-drawn picture of a pierced penis. *Id.* According to Koch, she informed Seidl that she was going to speak with McClure about the incident and Seidl told her that she could "say anything [she wanted], nothing's going to happen." *Id.* at 108-09. Indeed, Koch claims that she never received a response from McClure regarding either of her previous two complaints. *Id.* at 125-26.

8

### III.  SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 499 U.S. 923 (1991).  Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment is the "put up or shut up" moment in a lawsuit.  *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*.  Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997).  It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies.  *See*

*Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party

has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23;

*Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences

from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the

light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th

Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997).  The mere existence of a factual dispute, by itself,

is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of

the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at

248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or

unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969

F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element

essential to his case, one on which he would bear the burden of proof at trial, summary judgment

must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.

1996), *cert. denied*, 519 U.S. 1115 (1997).


## IV. <u>DISCUSSION</u>

Koch presents three separate claims for relief:  disparate treatment on the basis of her sex,

alleged sexual harassment that created a hostile work environment, and unlawful retaliation.  The

Court addresses each claim in turn.

10

## A.  DISPARATE TREATMENT CLAIM

Koch claims that Convenience discriminated against her on the basis of sex in the terms and conditions of her employment.  Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Koch offers no direct evidence of discriminatory intent on the part of Convenience. Therefore, to establish a *prima facie* case of sex discrimination under the indirect method of proof, she must show that:  (1) she was a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she was subjected to an adverse employment action; and (4) she was treated less favorably than similarly-situated male employees.  *See Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).  *But see Pantoja v. Am. NTN Bearing Mfg. Corp.*, --- F.3d ---, 2007 WL 2230095, *3-6 (7th Cir. Aug. 6, 2007) (criticizing this formulation of the indirect method, but nonetheless requiring a plaintiff to present some evidence that raises an inference of discrimination). If Koch can establish a *prima facie* case, Convenience must articulate a legitimate, non-discriminatory reason for its actions, and Koch must then respond by showing that Convenience's reason is really a pretext for discrimination.  *See Rhodes*, 359 F.3d at 504.

Here, the dispute between the parties centers upon whether Koch can establish the fourth prong of a *prima facie* case, *i.e.*, whether she can present some evidence that she was treated less favorably than similarly-situated male counterparts.  In support of her claim, Koch points to three other Store Managers, Donna Mart, Anthony Taylor, and John Clark, and argues that these other

managers were placed on performance improvement plans and given time to correct their deficient performance. Koch's Br. in Opp. at 15-17, 31-32. But, Koch does not indicate what violations these other three comparators committed.

In determining whether two employees are similarly situated, the Court must look at all relevant factors, the number of which depends on the context of the case. *See Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006); *Spath v. Hayes Wheels Int'l-In., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). In the case of employee discipline, a plaintiff must show that she and the allegedly comparable employees are similarly situated with respect to performance, qualifications, and conduct. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000); *see also Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("In order for an employee to be considered similarly situated, an employee must be directly comparable in all material respects."); *Patterson*, 281 F.3d at 680 (same). This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them, and had comparable experience, education, and qualifications. *Hull*, 445 F.3d at 952; *Patterson*, 281 F.3d at 680; *Radue*, 219 F.3d at 617-18.

Here, beyond the disciplinary measures taken, the Court has been presented with no evidence or argument about what violations the comparators committed. It is unclear whether the other managers were alleged to have committed violations similar to, and what Convenience might consider as serious as, the one proffered for Koch's termination, or whether those violations were

something less remarkable.  Absent meaningful specifics, a reasonable jury could not make a comparison and determine whether Convenience treated similarly-situated employees differently. *See Hull*, 445 F.3d at 952.

Further, the Court notes that Koch has presented no other evidence from which some discriminatory intent can be inferred.  Indeed, at least one of the comparators, Donna Mart, appears to be female.  Thus, under the circumstances, the Court concludes that Koch cannot meet her burden of showing discriminatory intent even under a standard that would not require a "similarly-situated" analysis.  *See Pantoja*, --- F.3d ---, 2007 WL 2230095, *5-6.  Accordingly, the Court **GRANTS** summary judgment on the disparate treatment claim and **DISMISSES** that claim **with prejudice**.

### B.  HOSTILE WORK ENVIRONMENT CLAIM

Koch has elected to proceed under the indirect method of proof for her hostile work environment claim.  Therefore, to prevail on this claim, Koch must establish that: (1) she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was sufficiently severe or pervasive to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability.

In addition, to qualify as hostile, a work environment must be objectively and subjectively offensive.  That is, it must be a work environment that a reasonable person would find hostile or abusive, and one that a plaintiff in fact perceived to be hostile or abusive.  *See Ezell v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005).  Teasing, offhand remarks, and isolated, non-egregious incidents are not considered sufficiently severe to satisfy the definition of a hostile environment. *See Faragher*

13

*v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  In order to evaluate whether a work environment is objectively hostile, the Court considers all of the circumstances, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir. 1994) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Essentially, Koch must paint a picture of a "hellish" workplace.  *See Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir. 2001).

The parties dispute whether Seidl's conduct was severe or pervasive enough to constitute harassment.  Subjectively, it is obvious that Koch believes that she was subjected to offensive conduct.  In fact, she testified at her deposition that she felt uncomfortable "every time [Seidl] was in the store" and that she was worried about whether he would try to rub up against her, tell dirty jokes, or try to make her feel stupid by calling her a "dumb blond."  Koch Dep. at 97-98.  The question then is whether Koch has presented sufficient evidence from which a jury could conclude that Koch's work environment was objectively offensive.  The Court finds that Koch has done so in this case.

Here, Koch contends that she was subjected to several instances of offensive behavior from Seidl, her supervisor, in a very short time frame of seven weeks.  During that time, she claims that Seidl incorrectly had the employee newsletter indicate that her favorite move was *9½ Weeks*, a sexually explicit movie; that Seidl told sexually explicit jokes; that Seidl called her a "dumb blond" on multiple occasions; and that Seidl made inappropriate contact with her by rubbing his body against hers.  Koch Dep. at 12-14, 96-98, 103-07, 110, 116-17, 125-27, 129-30; Koch Aff., ¶ 2; McClure Dep. Ex. 8.  Furthermore, Koch contends that Seidl asked her if she was sure that she was

14

not a natural blond and stated that "there are ways to find that out."  Koch Dep. at 96-98.  Although

Convenience may want to dispute the meaning of that statement, the jury could reasonably infer that

Seidl was making reference to viewing Koch's private parts.  In addition, Koch claims that Seidl

resumed his behavior of rubbing against her even though she asked him to stop.  *Id.* at 96, 106-07.

Finally, Seidl showed her a drawing of a pierced penis and, when Koch complained about the

drawing and indicated that she was going to inform McClure of the incident, Seidl told her that

nothing would happen.  *Id.* at 108-09.

The Court concludes that a jury could reasonably conclude that Koch has met her burden of

showing a "hellish" work environment.  Her testimony, if believed, goes beyond a few isolated

incidents of boorish behavior.  *See*, *e.g.*, *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir.

1993).  Moreover, this is not a case where the alleged offender ceased his activity when asked to stop

or one in which there is evidence of infrequent conduct.  *See*, *e.g.*, *Saxton v. Am. Tel. & Tel. Co.*, 10

F.3d 526, 534-35 (7th Cir. 1993).  Koch's testimony paints a picture of frequent inappropriate

behavior over a condensed time period.  For the foregoing reasons, the Court concludes that there

is a legitimate dispute about whether Seidl's alleged conduct was sufficiently severe or pervasive to

create a hostile work environment, one that the jury must resolve.  Accordingly, Convenience's

motion for summary judgment on this claim is **DENIED**.

## C.  RETALIATION CLAIM

Koch argues that she can establish her retaliation claim under the direct method of proof.  To

do so, she must offer evidence that she engaged in a statutorily protected activity, that she was

subjected to an adverse employment action, and that a causal connection exists between the two

events.  *See Scaife v. Cook County*, 446 F.3d 735, 741 (7th Cir. 2006).  The Seventh Circuit has stated

that circumstantial evidence that allows a jury to infer discrimination may be used under the direct

method of proof.  *See Rhodes*, 359 F.3d at 504; *Volovsek v. Wis. Dep't of Agric.*, 344 F.3d 680, 689

(7th Cir. 2003) (citing *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)).  *But see Pantoja*,

--- F.3d ---, 2007 WL 2230095, *7 (discussing *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d

640 (7th Cir. 2002)).[1]  The Seventh Circuit has identified several different types of circumstantial

evidence that can be used to create a "convincing mosaic" for a retaliation claim, including

suspicious timing, ambiguous statements, and behavior toward other employees.  *See Rudin v.*

*Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005); *Volovsek*, 344 F.3d at 689.

Here, there is no dispute that Koch was subject to an adverse employment action via her

termination.  Of the remaining two elements, Convenience's argument can be summarized into two

categories.  First, Convenience contends that there is no evidence that Koch engaged in protected

activity because there is no indication that Seidl was aware that Koch had complained to McClure

before making the decision to terminate her and because Koch's complaint to Seidl was not specific

enough to constitute protected activity.  Convenience's Reply Br. in Supp. of Mot. for Summ. J. at

6-10.  Second, Convenience asserts that even if Koch engaged in protected activity, there is no

evidence of a causal connection between her statements and termination of her employment.

Because the Court concludes that a reasonable jury could find that Koch was engaged in

protected activity and terminated as a result of that activity, the Court can readily dispose of

---

[1]  There continues to be an apparent intra-circuit split about whether circumstantial evidence can be used for the direct method of proof; however, the parties do not dispute this point, and so the Court will follow that line of cases that permit such evidence until the Seventh Circuit expressly overrules those cases or resolves the split.

Convenience's arguments.  It is clear that both McClure and Seidl made a decision to terminate Koch.  McClure Dep. at 34-38, 64-66; Seidl Dep. at 50-51 and Ex. 1.  Therefore, Koch's claim is not affected by what Seidl denies knowing when the combined knowledge of these two decision-makers is considered, as well as that of other Convenience personnel in supervisory or managerial positions.  Here, Koch claims that she complained about Seidl's behavior to Redmond, the training manager, and that on two different occasions she left voice messages for McClure complaining about Seidl's behavior and requesting that McClure intervene.  Koch Dep. at 12-14, 123-27, 129-30.  Thus, if Koch's testimony is believed, there is evidence that Koch engaged in protected activity and that Convenience was aware of that activity when it made a decision to terminate her employee.  Moreover, Seidl's denial notwithstanding, there is evidence suggesting that Koch complained directly to Seidl on more than one occasion that his actions were inappropriate and/or should cease, particularly Seidl's actions of rubbing against her and his display of the drawing of a pierced penis.  Koch Dep. at 96, 106-09.  Based on this evidence, a jury could reasonably conclude that Seidl was aware that Koch had made complaints about Seidl's behavior and that Koch had engaged in protected activity.

Similarly, the Court is unimpressed with Convenience's assertion that Koch's complaint regarding the drawing of the pierced penis was not specific enough to constitute protected activity.  Assuming that the incident occurred, a jury could easily conclude that the drawing was grossly inappropriate and offensive.  Koch's statement to that effect supports that conclusion, and her assertion that she was going to inform McClure of the incident demonstrates how serious she considered the matter to be.  Koch Dep. at 108-09.

The only question then is whether Koch can establish a causal connection between her protected activity and termination.  The Court concludes that there is evidence from which a jury could reasonably reach that conclusion.  While temporal proximity normally is insufficient by itself to create an issue of fact on causation, this does not mean that temporal proximity has no evidentiary weight.  *See Pantoja*, --- F.3d ---, 2007 WL 2230095, *8.  Indeed, as the Seventh Circuit has noted, a causal link is frequently established in cases where there is a suspiciously short period of time between a complaint and an adverse employment action.  *See*, *e.g.*, *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007).  The Court believes that this is such a case.  Koch's termination "followed closely on the heels" of her alleged threat to Seidl that she was going to inform McClure about the drawing of the pierced penis.  In fact, it occurred within the same week.  Further, the termination occurred after Koch had allegedly endured multiple incidents of harassment within a condensed time period of seven weeks and had already complained twice to McClure and once to Redmond without any response from or corrective action being taken by Convenience.  Of additional concern is Seidl's alleged response to Koch's complaint indicating that nothing would happen.  Finally, coupled with all of these circumstances is Koch's denial that she was verbally counseled for deficient performance and her contention that Convenience failed to fully investigate the incident with King and Barker by failing to question her or other employees and simply crediting King's and Barker's stories.  *See*, *e.g.*, *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 407 (7th Cir. 2007), *reh'g denied*.  Accordingly, the Court finds that there are factual disputes that preclude summary judgment on the retaliation claim and therefore **DENIES** Convenience's motion on this issue.

## V. **CONCLUSION**

For the foregoing reasons, Defendant's, Convenience Industry Associates LLC, d/b/a McClure Oil Corp., Motion to Strike Certain Statements Submitted in Opposition to Summary Judgment (Docket No. 59) is **GRANTED**. The unsworn statements are hereby stricken from the record.

In addition, Defendant's Motion for Summary Judgment (Docket No. 33) is **GRANTED in part and DENIED in part**. Plaintiff's, Christine Koch, claim for disparate treatment on the basis of her sex is **DISMISSED with prejudice**; however, her claims regarding hostile work environment and unlawful retaliation survive summary judgment.

IT IS SO ORDERED this 29th day of August, 2007.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

**Electronically distributed to:**

Ryan C. Fox
HASKIN LAUTER LARUE & GIBBONS
rfox@hlllaw.com

Denise K. LaRue
HASKIN LAUTER LARUE & GIBBONS
dlarue@hlllaw.com

Heather L. MacDougall
BAKER & DANIELS
heather.macdougall@bakerd.com

Christopher C. Murray
BAKER & DANIELS
christopher.murray@bakerd.com

David S. Wagner
BAKER & DANIELS
david.wagner@bakerd.com